**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| **ROBERT WILLIAMS,** | : | |
| | : | |
| **Petitioner,** | : | |
| | : | |
| **v.** | : | **No. 5:14-cv-00220 (CAR) (CHW)** |
| | : | |
| **Commissioner BRIAN OWENS,** | : | **Proceedings Under 28 U.S.C. § 2254** |
| | : | **Before the U.S. Magistrate Judge** |
| **Respondent.** | : | |
| | : | |

## REPORT AND RECOMMENDATION

Before the Court is Petitioner Robert Williams' petition for habeas corpus relief filed pursuant to 28 U.S.C. § 2254 arising out of his 2006 jury conviction in the Superior Court of Bibb County. Doc. 1. Because Petitioner is not entitled to habeas relief, it is **RECOMMENDED** that his petition be **DENIED**.

### PROCEDURAL BACKGROUND

Petitioner was indicted by a Bibb County grand jury on March 29, 2005 for malice murder, possession of a firearm during the commission of a crime, and possession of a firearm by a convicted felon. Doc. 1, p. 1; Doc. 7-3, p. 52-53. On February 9, 2006, a jury returned verdicts of guilty on charges of malice murder and possession of a firearm during the commission of a crime. *Id.* Petitioner was sentenced to life plus five years. *Id.*

Petitioner appealed directly to the Supreme Court of Georgia through new counsel. On appeal, Petitioner raised the following enumerations of error:

1. The trial court erred in not allowing the jury to rehear the testimony of Jimmy Lee White after they repeatedly requested to rehear this crucial evidence over its own concern for preventing error and by the jury's own admission making them angry;

2. The trial court erred in that the sufficiency of the evidence did not support Petitioner's conviction;
3. The trial court erred in allowing photographs which were clearly duplicative and were such that would inflame the senses of the jury over the objection of Petitioner;
4. The trial court erred in denying Petitioner's right to a speedy trial as afforded him both under the Georgia and United States Constitutions; and
5. Trial counsel provided ineffective assistance, in that counsel "repeatedly prejudicially allowed" Petitioner's incarceration to bias the jury, waived the demand for a speedy trial, and failed to object when the jury wanted to rehear, during its deliberations, the testimony of Jimmy Lee White.

Doc. 7-8, p. 59.

The Georgia Supreme Court affirmed the trial court's judgment and Petitioner's conviction on September 24, 2007, finding: that the evidence presented by the State was sufficient to authorize a rational trier of fact to find Petitioner guilty beyond a reasonable doubt; that Petitioner was not denied his constitutional rights to a speedy trial or to effective assistance of counsel; and that the trial court did not err when it admitted photographs of the deceased victim or when it refused to honor the deliberating jury's request to rehear certain testimony. *See Williams v. State*, 282 Ga. 561 (2007). Petitioner filed a timely Motion for Reconsideration, which was denied on October 29, 2007. Doc. 1, p. 8; Doc. 11-2.

On November 12, 2008, Petitioner filed his state habeas petition in the Superior Court of Hancock County, raising the following grounds:

1. Ground One: Petitioner received ineffective assistance of counsel under the Sixth Amendment to the U.S. Constitution and Article I, § I, ¶ XIV of the Georgia Constitution. The state did not prove venue, and appellate counsel did not raise this on appeal.
2. Ground Two: Petitioner received ineffective assistance of counsel under the Sixth Amendment to the U.S. Constitution and Article I, § I, ¶ XIV of the Georgia Constitution. Nathaniel Jordan, an ex police officer testified for the state. His testimony was material because he testified regarding Petitioner's post-arrest statement. At the time of Petitioner's trial, Jordan worked for Petitioner's attorney. This created a conflict of interest with trial counsel, and appellate counsel never raised this on appeal.
3. Ground Three: Petitioner received ineffective assistance of counsel under the Sixth Amendment to the U.S. Constitution and Article I, § I, ¶ XIV of the

Georgia Constitution. State's witnesses Bulloch, Fuller, Malone, and Lawson testified to what the victim stated without being present under trial under the necessity exception to the hearsay rule. Trial counsel moved in limine to prohibit this testimony as violation of confrontation.

4. Ground Four: Petitioner received ineffective assistance of counsel under the Sixth Amendment to the U.S. Constitution and Article I, § I, ¶ XIV of the Georgia Constitution. The state presented several witnesses who testified regarding another shooting involving the Petitioner to show motive, which had no relevance other than raise the Petitioner's bad character.

5. Ground Five: Petitioner received ineffective assistance of counsel under the Sixth Amendment to the U.S. Constitution and Article I, § I, ¶ XIV of the Georgia Constitution. The state used improperly obtained admissions and evidence from Petitioner, and counsel did not object or raise the issue on appeal.

6. Ground Six: Petitioner received ineffective assistance of counsel under the Sixth Amendment to the U.S. Constitution and Article I, § I, ¶ XIV of the Georgia Constitution. Petitioner's trial counsel did not object to inadmissible material evidence.

7. Ground Seven: Petitioner received ineffective assistance of counsel under the Sixth Amendment to the U.S. Constitution and Article I, § I, ¶ XIV of the Georgia Constitution. Petitioner's trial counsel did not object to improper jury charges and did not request the court to charge on material aspects of Petitioner's case.

8. Ground Eight: Petitioner received ineffective assistance of counsel under the Sixth Amendment to the U.S. Constitution and Article I, § I, ¶ XIV of the Georgia Constitution. Petitioner will supplement with facts, if necessary.

9. Ground Nine: Petitioner received ineffective assistance of counsel under the Sixth Amendment to the U.S. Constitution and Article I, § I, ¶ XIV of the Georgia Constitution. Petitioner's appellate counsel was ineffective for not raising on appeal the above-listed issues.

10. Ground Ten: The indictment charging Petitioner with murder did not include the essential element of "human being." Petitioner's conviction is void. Petitioner received ineffective assistance of counsel under the Sixth Amendment to the U.S. Constitution and Article I, § I, ¶ XIV of the Georgia Constitution when trial and appellate counsel did not raise this issue.

Docs. 1-4; 7-1. While Petitioner originally raised nine separate grounds for relief (Doc. 1-4), he

amended his petition on June 16, 2010 to raise a tenth ground (Doc. 7-1, p. 1).

An evidentiary hearing was held on June 16, 2010, at which Petitioner was represented

by counsel. Petitioner's appellate and new trial counsel, Jonathan Perry Waters, testified. *See*

Copy of volume I of II of the transcript from Petitioner's June 16, 2010, state habeas corpus

hearing, Doc. 7-2, pp. 5-37. Petitioner's counsel also indicated at the outset of the hearing that the only issues he would be proceeding on were Grounds One, Three, Four, and Ten. *Id.* at 3. The state habeas court denied relief in a final order dated August 17, 2012. (Doc. 1-5). The Georgia Supreme Court denied Petitioner's application for a certificate of probable cause to appeal on March 28, 2014. (Doc. 1-6).

On June 12, 2014, Petitioner filed his federal habeas corpus petition. Doc. 1. Petitioner raised Grounds One, Three, Nine, and Ten previously raised in his state habeas proceedings. Respondent filed an answer and brief in support thereof. Doc. 4. Respondent also filed an unopposed motion to intervene, which the Court granted on August 20, 2014. Docs. 5, 6.

## STATEMENT OF FACTS

In accordance with 28 U.S.C. § 2254(e)(1), and for purposes of considering this petition, the facts as found by the Georgia Supreme Court on direct appeal of Petitioner's convictions are adopted by the Court. These facts are as follows:

> The State presented evidence that the victim was found dead on a street in east Macon the evening of December 20, 2004. A nearby resident testified she heard gunshots between 5:00-5:30 p.m., and the medical examiner who performed the autopsy testified the victim suffered three gunshot wounds to the head and torso, with the shot to the head fired from a maximum distance of 18 inches. The bullets removed from the victim's body during the autopsy were fired from a 9-mm semi-automatic Ruger pistol. The victim's wife, with whom appellant was having an intimate relationship, testified she saw appellant in possession of a 9-mm Ruger pistol a month before the victim was killed. The victim's wife also testified the victim moved to Macon in November 2004 at appellant's behest, and the victim feared appellant because appellant had paid the victim $500 to kill another man in Macon in November 2004 and the victim had only wounded the target. The victim's wife stated appellant threatened to kill the victim, told her he was tired of taking care of the victim, and asked her to take out insurance on the victim.
>
> Jimmy Lee White testified he, appellant, and the victim traveled together from Macon to Athens to do construction work the day the victim was killed; appellant and the victim had an argument and, when weather prevented the work, appellant bought a car and directed White to drive it to Macon, leaving appellant and the victim to return to Macon in the car in which the trio had driven to Athens. White

testified he saw a car containing appellant and the victim turn on a street near where the victim's body was found.

Appellant's former wife testified appellant told her the night the victim was shot that she was not to speak to police, that the victim had been in Macon for a purpose and was of no more use to appellant, that appellant could not be criminally charged with the victim's murder because the murder weapon had not been recovered, and the authorities would have had to test appellant for gunshot residue in order to prosecute him.

*Williams v. State*, 282 Ga. 561, 561-62 (2007). Additional facts from the record are supplemented throughout this recommendation when necessary.

## NEED FOR AN EVIDENTIARY HEARING

Under the Anti-Terrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2244, if an applicant has failed to develop the factual basis of a claim in state court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that: (A) the claim relies on: (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense. 28 U.S.C. § 2254(e)(2). After a careful review of the record, and in light of the statement of facts presented herein, no evidentiary hearing is warranted in this case.

## LEGAL STANDARDS

In accordance with the provisions of AEDPA, federal courts are prohibited from granting habeas relief with respect to any claim adjudicated on the merits in state court unless that decision either: (1) resulted in a decision contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court, or (2) resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented in the state

court proceedings. 28 U.S.C. § 2254(d); *Wellons v. Warden, Ga. Diagnostic and Classification Prison*, 695 F.3d 1202, 1206 (11th Cir. 2012). Not only is this standard "difficult to meet," *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011), but it also is a "highly deferential standard for evaluating state-court rulings . . . which demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002).

A state court's decision is "contrary to" clearly established federal law if either "(1) the state court applied a rule that contradicts the governing law set forth by Supreme Court case law, or (2) when faced with materially indistinguishable facts, the state court arrived at a result different from that reached in a Supreme Court case." *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001). An "unreasonable application" of clearly established federal law may occur if the state court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case." *Id.* "An unreasonable application may also occur if a state court unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." *Id.*

When a "state court's application of federal law is challenged, it must be shown to be not only erroneous, but objectively unreasonable." *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003). Similarly, when reviewing a state court's decision applying federal law, a federal court must not determine the accuracy of the result, but instead, whether the result was objectively unreasonable, which is "a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). A state court's factual determinations are presumed correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

<u>DISCUSSION</u>

Construed in the light most favorable to him, Petitioner's federal habeas petition, as amended, contains the following grounds for relief: (1) Petitioner's appellate counsel was ineffective by failing to argue that the trial court did not have venue to hear the case; (2) Petitioner's appellate counsel was ineffective by failing to appeal the admission of statements by four witnesses; (3) Petitioner's appellate counsel was ineffective by failing to argue that the murder indictment was deficient; and (4) that Petitioner's murder indictment was void. Doc. 1, pp. 5-6. Petitioner's petition is notably absent of supporting law, and habeas counsel has not filed a supporting brief. Because all grounds of the petition either fail on the merits or are procedurally defaulted, Petitioner is not entitled to any relief.

**A. Ground One: Petitioner's appellate counsel was ineffective by failing to argue that the trial court did not have venue to hear the case.**

In his first ground, Petitioner contends that appellate counsel rendered ineffective assistance by failing to argue that the trial court did not have venue to hear the case. Petitioner raised the same arguments in his amended state habeas petition, which are assumed to be incorporated into his federal petition. The state habeas court considered these arguments on the merits and concluded that Petitioner had failed to establish that appellate counsel's performance was deficient or that any alleged deficiency prejudiced Petitioner on direct appeal.

The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To prevail on an ineffective assistance claim, "a petitioner must show that counsel's performance was deficient, and that the deficiency prejudiced the defense." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003), citing *Strickland*, 466 U.S. at 687. To establish deficient performance, "Petitioner must show counsel's performance 'fell below an objective standard of reasonableness.'" *Cook v. Warden, Georgia*

*Diagnostic Prison*, 677 F.3d 1133, 1136 (11th Cir. 2012), quoting *Strickland*, 466 U.S. at 688. To establish prejudice, "Petitioner must show that a 'reasonable probability' exists that 'but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Cook*, 677 F.3d at 1136, quoting *Strickland*, 466 U.S. at 697. Petitioner must establish both prongs of *Strickland* in order to show that counsel rendered ineffective assistance. *Morton v. Secretary, Florida Department of Corrections*, 684 F.3d 1157, 1166 (11th Cir. 2012).

The record establishes that the state habeas court properly applied *Strickland* and correctly rejected Petitioner's claims of ineffective assistance of appellate counsel. Appellate counsel testified at length as to the issue of venue in this case. Doc. 7-2, pp. 5-16. Appellate counsel first testified that he was familiar with the issue of venue, and that the issue was discussed at trial. Doc. 7-2, p. 10. Appellate counsel testified that a witness named Dorothy Allen spoke at trial. Doc. 7-2, p. 13. Ms. Allen lived at 760 Plum Tree Street in Macon, Bibb County, Georgia. Doc. 7-2, p. 14; Doc. 7-4, p. 66. Ms. Allen was the witness who heard the gunshots. Doc. 7-2, p. 14; Doc. 7-4, p. 67. Specifically, Ms. Allen was in the kitchen of her home, which is on the side of her home, and close enough to hear the street. Doc. 7-4, p. 67. She further testified that she heard the shots while she was watching Divorce Court between five p.m. and five-thirty p.m on December 20, 2004. Doc. 7-4, p. 68. Ms. Allen did not immediately look outside to see what happened, but her neighbor rang the doorbell and told her to come down and see the scene. Doc. 7-4, p. 69.

In addition to Ms. Allen, two other witnesses testified at trial: Deshon Ingram and Johnny Kaigler. Doc. 7-2, p. 15; Doc. 7-4, pp. 72-82. Ingram testified that while riding a bike to a friend's house, at night, on December 24, 2004, he saw a man lying on Plum Tree Street. Doc. 7-4, p. 73. The man was not moving or breathing. Doc. 7-4, p. 74. Kaigler, who was riding his bike

with Ingram, corroborated Ingram's testimony. Doc. 7-4, pp. 74-81. Both of these witnesses were mentioned by habeas counsel in the hearing, though the relevance of their testimony was not argued by habeas counsel. Doc. 7-2, p. 15. Relatedly, the state also called Ronnie William Finney (Doc. 7-4, pp. 83-86), Investigator James Brainard (Doc. 7-4, pp. 87-113), and Investigator Conrnelius T. Pendleton, III, (Doc. 7-4, pp. 114-133), all three of whom testified about the Plum Tree Street crime scene and the evidence obtained therein.

Notably, a medical examiner, Dr. Melissa Ann Sims, also testified at trial. Doc. 7-4, p. 25. Specifically, Dr. Sims was the Regional Medical Examiner for the Georgia Bureau of Investigation for Central Georgia. Doc. 7-4, p. 25. She further testified she "service[s] Bibb County." Doc. 7-4, p. 25. She stated that if there is an autopsy for the Macon Police Department or the Bibb County Sheriff's Department it comes through her lab. Doc. 7-4, p. 25. Dr. Sims stated that she conducted the autopsy on the victim in Petitioner's case. Doc. 7-4, p. 26-27.

After considering the underlying record and appellate counsel's testimony, the state habeas court concluded that Petitioner failed to show that appellate counsel's performance was deficient or that Petitioner was prejudiced by appellate counsel's performance in failing to raise the issue of venue.  Petitioner fails to establish that the state habeas court's decision finding appellate counsel provided effective assistance was "contrary to" or "an unreasonable application of" clearly established federal law. 28 U.S.C. § 2254(d)(1). Petitioner's counsel cites to no case law in his federal habeas petition and has not shown that the application of the law was unreasonable. Doc. 1.

Additionally, Petitioner does not establish that the state habeas court's decision was "based on an unreasonable determination of the facts in light of the evidence presented" at the state proceeding. 28 U.S.C. § 2254(d)(2). In making its determination concerning venue in

Petitioner's case, the state habeas court held that "standing alone the evidence that the body was found near a Bibb County home may or may not have been enough to establish venue beyond a reasonable doubt." Final Order denying State habeas corpus, Doc. 1-5, p. 12. The habeas court cited *Chapman v. State*, 275 Ga. 314, 317-18, in recognizing that "establishing the venue of a near-by site does not establish the venue of the murder site itself, but an officer's testimony that he discovered the victim's body on a street located in a certain county was sufficient evidence to establish beyond a reasonable doubt that venue of the murder prosecution was in that county." Doc. 1-5, p. 12. The state habeas court found that because the medical examiner testified that she serviced Bibb County, there was enough circumstantial evidence to prove that venue was proper in Bibb County. Doc. 1-5, pp. 12-13; see also *Chapman*, 275 Ga. 314, 317 ("public officials are believed to have performed their duties properly and not to have exceeded their authority unless clearly proven otherwise."). This legal analysis could also be applied to the testimony of Investigator James Brainard (Doc. 7-4, pp. 87-113) and Investigator Conrnelius T. Pendleton, III, (Doc. 7-4, pp. 114-133) who both testified as to finding the victim on Plum Tree Street. Because venue was proven at trial to a standard appropriate under Georgia law, the state habeas court found that Petitioner failed to satisfy the two prong test set forth in *Strickland* by failing to demonstrate that appellate counsel was deficient or that counsel's actions prejudiced the outcome of the appeal. Doc. 1-5, p. 11.

Petitioner offers no additional evidence, let alone "clear and convincing evidence," to contradict any of the state habeas court's factual determinations. 28 U.S.C. § 2254(e)(1). And after carefully reviewing the record, there is no basis to conclude that the state habeas court's decision that appellate counsel rendered effective assistance ran afoul of either 28 U.S.C. §

2254(d)(1) or 28 U.S.C. § 2254(d)(2). Consequently, Petitioner is not entitled to any relief on Ground One.

**B. Ground Two: Petitioner's appellate counsel was ineffective by failing to appeal the admission of statements by four witnesses.**

In his second ground, Petitioner contends that appellate counsel rendered ineffective assistance by failing to appeal the admission of statements by four witnesses. Petitioner raised the same argument in his amended state habeas petition, which is presumed to be incorporated into his federal petition. At the state habeas level, Petitioner challenged the admission of testimony of four specific witnesses: Ed Bulloch, Derek Fuller, Herberta Malone, and Hattie Lawson. Doc. 1-4, p. 4. Although not entirely clear, it appears as though Petitioner is arguing that statements made by the victim, Michael Malone, to the four witnesses enumerated above, were improperly admitted under the necessity exception to the hearsay rule. Doc. 1-4, p. 4. Petitioner further argues that the admission of these statements violated Petitioner's right to confrontation pursuant to *Crawford v. Washington*, 541 U.S. 36 (2004). In his federal petition, this ground is presented in the form of an ineffective assistance of appellate counsel claim for failing to raise the issue on appeal. The state habeas court considered these arguments on the merits and concluded that Petitioner failed to establish that appellate counsel's performance was deficient or that any alleged deficiency prejudiced Petitioner on direct appeal.

1. *Necessity Exception to Hearsay and the Confrontation Clause*

In addition to the *Strickland* standard enumerated above, there are two other legal doctrines presented in this ground. The first is the "necessity exception" to hearsay as recognized by Georgia Courts. At the time of Petitioner's trial, O.C.G.A. § 24-3-1(b) (current version at O.C.G.A. § 24-8-804 (2013)) permitted "the use of hearsay evidence in specified cases from

necessity." *Yancey v. State*, 275 Ga. 550, 553 (2002). The Georgia Supreme Court formulated a

three prong test to determine the admissibility of the hearsay under the necessity exception:

> The two prerequisites for the admission of hearsay because of necessity are: a
> finding that the hearsay is necessary, and a finding that the declarant's hearsay
> statement is surrounded by particularized guarantees of trustworthiness. ... [T]he
> hearsay declarant's death or unavailability, in and of itself, does not satisfy the
> "necessary" component.... To satisfy the requirement that the hearsay be
> "necessary," in addition to showing the hearsay declarant's unavailability due to
> death, privilege, or other reason, the proponent of the hearsay must also show
> "that the statement is relevant to a material fact and that the statement is more
> probative on that material fact than other evidence that may be procured and
> offered."
> ...
> After the completion of the three-pronged examination of whether the hearsay is
> "necessary," the trial court must then examine whether the hearsay statement is
> surrounded by "particularized guarantees of trustworthiness," that is, whether
> there is "something present which the law considers a substitute for the oath of the
> declarant and his cross examination by the party against whom the hearsay is
> offered." Absent a showing of particular guarantees of trustworthiness or indicia
> of reliability, the proffered hearsay must be excluded from evidence.

*Clark v. State*, 271 Ga. 6, 9-10 (1999).

The second doctrine Petitioner relies on in his argument is the Confrontation Clause. The

Sixth Amendment to the United States Constitution requires the accused to be afforded an

opportunity to cross-examine a witness when hearsay statements of an unavailable witness are

testimonial. *Crawford*, 541 U.S. at 68. In determining what statements are testimonial, the

Eleventh Circuit includes:

> (1) ex parte in-court testimony or its functional equivalent—that is, material such
> as affidavits, custodial examinations, prior testimony that the defendant was
> unable to cross-examine, or similar pretrial statements that declarants would
> reasonably expect to be used prosecutorially, (2) extrajudicial statements ...
> contained in formalized testimonial materials, such as affidavits, depositions,
> prior testimony, or confessions, (3) statements that were made under
> circumstances which would lead an objective witness reasonably to believe that
> the statement would be available for use at a later trial, and (4) statements taken
> by police officers during the course of an interrogation.

*United States v. Thompson*, 568 F. App'x 812, 818 (11th Cir. 2014) (citing *Crawford*, 541 U.S. at 51–52) (internal quotations omitted). If hearsay evidence is testimonial in nature, the Confrontation Clause bars its admission unless the witness "was unavailable to testify [at trial], and the defendant had had a prior opportunity for cross-examination." *Crawford*, 541 U.S. at 53–54. When the evidence is "nontestimonial" hearsay, the states are free to develop their own hearsay law. *Id.* at 68. The Supreme Court of Georgia has recognized that "[a] witness testifying at trial subject to cross examination can testify as to what he has heard without violating the confrontation clause." *Littles v. Balkcom*, 245 Ga. 285, 286 (1980).

Despite Petitioner's cursory allegations, the record establishes that the state habeas court properly applied *Strickland* and correctly rejected Petitioner's claims of ineffective assistance of appellate counsel. Further, the trial court's admission of statements made by Michael Malone did not violate Petitioner's constitutional rights. The record reflects the following pre-trial facts pertinent to this ground.

On December 28, 2005, trial counsel filed a Motion in Limine seeking to exclude the testimony of: Ed Bulloch, Herberta Malone, Jimmy White,[1] and Hattie Lawson at trial. Doc. 7-3, pp. 1-3. The trial court held a hearing on several pre-trial motions, including the motion in limine, on January 4, 2006. Doc. 7-3, pp. 92-130. The motion in limine specifically addressed the exclusion of hearsay statements made by the deceased victim, Michael Malone, as presented through the testimony of four witnesses. Doc. 7-3, p. 94. Trial counsel argued that there were "some issues with [the] reliability of the statements and whether or not there's other evidence that would be better proof of that that could be brought in." Doc. 7-3, p. 94. It was further determined that trial counsel was objecting to "any conversations the deceased may have had with any of the four individuals prior to the victim's death within … the forty-five days leading

---

[1] The testimony of Jimmy White is not at issue in Petitioner's state habeas petition.

up to the victim's death." Doc. 7-3, p. 99. For each witness, trial counsel argued that the necessity exception to hearsay did not apply when allowing the witness statements at issue. Doc. 7-3, p. 101. The court withheld ruling on the motion in limine, and indicated it would make the hearsay determinations at trial. Doc. 7-3, p. 103.

1. *Ed Bulloch*

The first witness at issue, Ed Bulloch, was a roommate of the victim at a Suburban Lodge. Doc. 7-3, p. 97. The state argued at the pre-trial motion that Mr. Bulloch would testify that the deceased "knew the Defendant was having an affair with his wife, the deceased was having a lot of difficulty getting in touch with the defendant which was created problems between the Defendant and the deceased, [and] the deceased felt the Defendant had abandoned the deceased in Macon." Doc. 7-3, p. 97. The state further argued that these statements should be admitted under the necessity exception to hearsay for the purpose of proving Petitioner's motive. Doc. 7-3, p. 98.

Bulloch testified at trial. Doc. 7-4, pp. 134-148. Mr. Bulloch, who also goes by Eddie and Fatback, worked with the victim doing steel performance and erection. Doc. 7-4, pp. 134. During December 2004, Mr. Bulloch was working in a Kohl's Distribution Warehouse in Warner Robins. Doc. 7-4, pp. 134. Mr. Bulloch testified that he met the victim when he was standing outside the Suburban Lodge smoking a cigarette. Doc. 7-4, pp. 135. At this time in the testimony, the jury was instructed to leave the courtroom and the line of questioning continued without the jury present. Doc. 7-4, pp. 135. The Court allowed the state to elicit the following testimony from Mr. Bulloch:

> State:      Did he tell you why he didn't have anywhere to stay?
> Bulloch:    He had been staying with his employer and his employer had left and checked out.
> State:      Did he say who his employer was?

| | |
|---|---|
| Bulloch: | All I know is a guy named Robert. |
| State: | Did Michael Malone eventually stay with you? |
| Bulloch: | Yeah, I felt sorry for him. I let him stay at night while I was there and then I'd take him over to a little house during the daytime. |
| State: | Do you remember where the house was at? |
| Bulloch: | It was a couple of blocks away. It was off of Pio Nono but I don't remember addresses that much. It was only about two or three blocks away |
| State: | Do you know whose house that was? |
| Bulloch: | A guy named Derek. He was another acquaintance of Michael Malone. |
| State: | Now you mentioned that Michael Malone was staying with you at night. |
| Bulloch: | Uh-Huh (affirmatively) |
| State: | Did Michael Malone ever have the opportunity to use your cell phone? |
| Bulloch: | Yes, I let him use my phone |
| State: | And who was he trying to contact? |
| Bulloch: | He tried to contact Robert, his employer. A guy he had worked with. All I knew him by was the Preacher. His Aunt. |
| State: | Were you ever privileged to hear what Michael Malone was talking to, or who he was talking to when he was talking to them? |
| Bulloch: | I didn't eavesdrop but I hear a little bit. |
| State: | Okay. Did you ever make contact with Robert Williams? |
| Bulloch: | After he had got off the phone one time I said who was that. He said that was Robert. |
| State: | Okay. And what, do you remember that conversation? Did Michael talk to you about that conversation? |
| Bulloch: | It was something like please come and get me, I have no food or I have nowhere to stay, please come get me. |
| State: | Do you remember when that conversation happened? |
| Bulloch: | It was one afternoon when I come in. It was probably 6:00 or so one afternoon. |
| State: | When's the last time you saw Michael Malone? |
| Bulloch: | That same night. It was probably about 10:00. I had let him out. |
| State: | Do you remember was that the day before you heard about this murder? |
| Bulloch: | That was the day before, yes. |
| State: | Did he try to contact anybody else that night? |
| Bulloch: | He had called the Preacher, his aunt. |
| State: | Did Michael Malone ever talk to you about Robert Williams? |
| Bulloch: | In regard to Michael had worked for him and the conversation we had had was he was wanting to get back to work and get back to his regular life. |
| State: | Did he ever say anything to you about his wife, Herberta? |
| Bulloch: | No, no. |

State:       Do you know about, if I were to show you some phone records—
             [phone records presented as exhibits] On 7/19 can you tell me how
             many times he tried to call Robert Williams?
Bulloch:     Probably –
State:       Was it a lot?
Bulloch:     It was a lot, yeah.
State:       Do you know why he wanted to talk to Robert Williams so badly?
Bulloch:     He wanted to find out what was going on with him.

Doc. 7-4, pp. 135-139.

Trial counsel objected to the above statement on the basis that it was hearsay, and that there were not sufficient indicia of reliability to admit the testimony. Doc. 7-4, p. 139. The trial court applied the test from *Clark*, 271 Ga. at 9-10, and determined that the testimony was reliable, that the declarant was unavailable, but left a determination for truthfulness up to the jury. Doc. 7-4, p. 140. The Court also made the probative determination by asking "how else could the State show that Mr. Malone worked for Mr. Williams and Mr. Williams had put him out and that's why he was staying with Mr. Bulloch?" Doc. 7-4, p. 140. Trial counsel answered that he wasn't sure the State could prove that fact without the testimony. Doc. 7-4, p. 140. Therefore, the Court charged the jury with instructions noting that the testimony was hearsay, but left the determination of truthfulness to the jury. Doc. 7-4, p. 142.

At the state habeas hearing, Petitioner's counsel insinuated that Mr. Bulloch and the victim may have had a close confidential relationship, and that appellate counsel may have been ineffective by not arguing that the evidence was wrongfully admitted. Doc. 7-2, p. 20. The state habeas order considered this argument, and found that the statements were not "testimonial" as examined in *Crawford*, and therefore there was no confrontation clause violation. Doc. 1-5, p. 15. Further, the state habeas court found that the statements from Mr. Bulloch, as non-testimonial hearsay, could be admitted at trial under Georgia law. See Doc. 1-5, p. 16; see also *Littles*,  245 Ga. at 286 ("[a] witness testifying at trial subject to cross examination can testify as to what he

16

has heard without violating the confrontation clause."). Accordingly, because the testimony did not violate the confrontation clause and were properly admitted, appellate counsel was not deficient in failing to raise the admission of Mr. Bulloch's testimony on appeal.

### 2. *Herberta Malone*

The second witness, Herberta Malone, was the wife of the victim, as well as the girlfriend of Petitioner. Doc. 7-3, p. 98. Before hearing her testimony, the trial court sent the jury out of the courtroom to determine which parts of Ms. Malone's testimony concerning the statements of the victim should be heard by the jury. Doc. 7-4, p. 165. Particularly, the trial court found issue with two statements that Ms. Malone made containing hearsay from the victim. Doc. 7-4, pp. 168-172. The first was a statement made close to November 20, during a phone call, when the victim stated that Petitioner paid him $500 to kill a man. Doc. 7-4, p. 169. The second statement was made to Ms. Malone by the victim on Thanksgiving, when the victim told her that he was scared of Petitioner. Doc. 7-4, p. 171. The Court determined that the first statement could be presented to the jury as hearsay, finding each prong in *Clark* met, and specifically meeting the third prong as relevant to prove motive. Doc. 7-4, p. 170.

At the state habeas hearing, Petitioner's counsel argued that Ms. Malone's statement as a girlfriend of the deceased should have been excluded as unreliable and biased. Doc. 7-2, p. 22. It follows that Petitioner's counsel is now arguing that appellate counsel was ineffective in failing to raise that issue on appeal. However, appellate counsel affirmed that he considered the issue when determining which issues to raise on appeal. Doc. 7-2, p. 22. The state habeas order considered this argument, and found that the statements were not "testimonial" as examined in the Supreme Court case *Crawford*, and therefore that there was no confrontation clause violation. Doc. 1-5, p. 15. Further, the state habeas court found that the statements from Ms. Malone, as

non-testimonial hearsay, could be admitted at trial under Georgia law. See Doc. 1-5, p. 16; see also *Littles*,  245 Ga. at 286 ("[a] witness testifying at trial subject to cross examination can testify as to what he has heard without violating the confrontation clause.").

The state habeas court did not address the specific argument as to whether Petitioner's appellate counsel was deficient by not raising the issue of bias or reliability on appeal, or that Petitioner was prejudiced by this alleged deficiency. However, when reviewing Ms. Malone's testimony and the trial court's determination of the admissibility of her statements, this Court does not find that appellate counsel's performance was deficient, or that Petitioner was prejudiced by any alleged deficiency. Accordingly, because the testimony did not violate the confrontation clause and were properly admitted, appellate counsel was not deficient in failing to raise the admission of Ms. Malone's testimony on appeal.

### 3. *Derek Fuller*

The third witness at issue in Petitioner's state habeas, Derek Fuller, was a friend of the Petitioner. Doc. 7-4, p. 149. The testimony of this witness was not discussed at the state habeas hearing, but Petitioner's counsel did inquire as to whether appellate counsel remembered Derek Fuller's "role in the case." Doc. 7-3, p. 18. Appellate counsel indicated that he did not. Doc. 7-3, p. 18. The state habeas order did not address the testimony of Derek Fuller in its analysis of Petitioner's claims. See Doc. 1-5. This Court assumes that Petitioner continues his argument that trial counsel was deficient in not presenting evidence of the relationship between Mr. Fuller and Petitioner, and that appellate counsel rendered ineffective assistance when he failed to raise the issue on appeal.

Mr. Fuller, a resident of Macon, knew Petitioner as a child, and Petitioner served as "something like a step-dad" to Mr. Fuller. Doc. 7-4, p. 149. Mr. Fuller testified that he also knew

the victim through Petitioner, and that Petitioner and the victim had worked together, and that Petitioner found accommodations for the victim when he needed them. Doc. 7-4, p. 150. At this point, the jury was excused from the courtroom so that the court could rule on the forthcoming testimony. Doc. 7-4, p. 151. At particular issue for the court was a statement made by the victim to Mr. Fuller the Sunday before the victim was found dead. Doc. 7-4, p. 153. Mr. Fuller testified that during this conversation, the victim stated:

> He was like he was just stranded. He didn't have any money. They had got kicked out of the hotel room and he was like he was out in the cold. And he needed to get in touch with [Petitioner] so he can find out what the deal is so he can take him back home or is he coming to get him or whatever.

Doc. 7-4, p. 154. The Court made the same determination as it did for Mr. Bulloch. Doc. 7-4, p. 154. Petitioner's trial counsel impeached Mr. Fuller with two criminal convictions for possession and sale of cocaine. Doc. 7-4, p. 159.

As the state habeas order did not address appellate counsel's alleged deficiency in not raising an ineffective assistance claim of trial counsel for Petitioner, it will be addressed here. After reviewing the record in this case Petitioner cannot show either deficiency or prejudice from appellate counsel's alleged failure to appeal trial counsel's alleged failure to object to Mr. Fuller's testimony. First, the Court can find no requirement that evidence must "be presented to show any type of confidential or close relationship what would allow the hearsay under the necessity exception" as posited by Petitioner's counsel. Instead, Georgia court's followed the three-prong standard outlined above in *Clark*, 271 Ga. at 9-10, and those prongs are met in this case as well.

The first of the three prongs of the "necessary" component of the showing required for the admission of hearsay testimony under the necessity exception, unavailability, was shown by the victim's death. The second prong, relevance, was shown because such a showing of why the

victim was in Macon was relevant to the murder. Regarding the third prong of the "necessary" component, the requirement that proffered evidence be more probative of the fact for which it is offered than other evidence which may be procured and offered, was presumably met for the same reasons as it was for Mr. Bulloch—as indicated by the court. Further, the statements of Mr. Fuller, as non-testimonial hearsay, could be admitted at trial under Georgia law. See Doc. 1-5, p. 16; see also *Littles*, 245 Ga. at 286 ("[a] witness testifying at trial subject to cross examination can testify as to what he has heard without violating the confrontation clause."). Additionally, after reviewing Mr. Fuller's testimony and the trial court's determination of the admissibility of his statements, this Court does not find that appellate counsel's performance was deficient, or that Petitioner was prejudiced by any alleged deficiency. Because the testimony did not violate the confrontation clause and were properly admitted under the necessity exception to hearsay, appellate counsel was not deficient in failing to raise the admission of Mr. Fuller's testimony on appeal.

### 4. *Hattie Lawson*

The fourth witness, Hattie Lawson, was a customer of both Petitioner and the victim, and someone with whom the victim had had numerous conversations with the night before he died. Doc. 7-3, p. 99. Ms. Lawson's testimony, like the testimony of Ms. Malone, was first heard outside the presence of the jury. Doc. 7-4, p. 173. After hearing the testimony, the Court issued the same ruling as it did for the Mr. Bulloch and Mr. Fuller, allowing the hearsay statements to be heard by the jury. Doc. 7-5, p. 2. Ms. Lawson testified at trial that she spoke to the victim on the phone and that the victim had told her that he had been stranded at a hotel by the Petitioner. Doc. 7-4, pp. 174-175.

The state habeas order considered this argument, and found that the statements were not "testimonial" as examined in *Crawford*, and therefore there was no confrontation clause violation. Doc. 1-5, p. 15. Further, the state habeas court found that the statements from Ms. Lawson, as non-testimonial hearsay, could be admitted at trial under Georgia law. See Doc. 1-5, p. 16; see also *Littles*,  245 Ga. at 286 ("[a] witness testifying at trial subject to cross examination can testify as to what he has heard without violating the confrontation clause."). Further, when reviewing Ms. Lawson's testimony and the trial court's determination of the admissibility of her statements, this Court does not find that appellate counsel's performance was deficient, or that Petitioner was prejudiced by any alleged deficiency. Accordingly, because the testimony did not violate the confrontation clause and were properly admitted under the necessity exception to hearsay, appellate counsel was not deficient in failing to raise the admission of Ms. Lawson's testimony on appeal.

For the foregoing reasons, Ground Two of Petitioner's habeas petition must be denied.

### C. Ground Three and Four: Petitioner's appellate counsel was ineffective by failing to argue that the murder indictment was deficient; and Petitioner's murder indictment was in fact void.

In his third and fourth ground, Petitioner claims that his sixth amendment rights were violated when his appellate counsel failed to raise on appeal the argument that Petitioner's murder indictment was void and defective; and in turn, that Petitioner's murder indictment was void and defective. The indictment in this case alleges that Petitioner "unlawfully and with malice aforethought [did] cause the death of Michael Malone by shooting him with a handgun." Doc. 7-2, p. 53. Petitioner, through counsel, contends that the indictment was defective because it omitted an essential element of murder by failing to specify that Michael Malone was a human being. Doc. 1, p. 6. Petitioner cites no legal basis for this claim, nor any "clear and convincing

evidence" contradicting the state habeas court's finding that this claim is not supported by the law and procedurally barred.

Petitioner's argument is not supported by law, as the Georgia Supreme Court has long held "that an indictment that names a murder victim but fails to allege that the victim was a human being is sufficient." *Wagner v. State*, 282 Ga. 149, 151 (2007) (citing *Alexander v. Luzier*, 229 Ga. 434 (1972); *Green v. State,* 172 Ga. 635 (1931); *Sutherland v. State,* 121 Ga. 591 (1905)). Therefore, Petitioner fails to show that appellate counsel rendered ineffective assistance when he failed to raise this issue on appeal, and relief on Grounds Three and Four is denied.

Further, this recommendation notes that the state habeas corpus court found the claim now raised in Ground Four of Petitioner's federal petition was defaulted under O.C.G.A. § 9-14-48(d),[2] as it was not raised at the trial level and on direct appeal, and that Petitioner had not shown cause and actual prejudice as defined under state law to overcome the default. Doc. 1-5, p. 4.

Georgia's state procedural bar provides that any grounds for relief not raised in the original or amended habeas petitions are deemed waived unless the Court "finds ground for relief asserted therein which could not reasonably have been raised in the original or amended petition." O.C.G.A. § 9-14-51.[3] Because procedural default would bar any effort to litigate this

_____

[2] O.C.G.A. § 9–14–48(d) provides as follows:
The court shall review the trial record and transcript of proceedings and consider whether the petitioner made timely motion or objection or otherwise complied with Georgia procedural rules at trial and on appeal and whether, in the event the petitioner had new counsel subsequent to trial, the petitioner raised any claim of ineffective assistance of trial counsel on appeal; and absent a showing of cause for noncompliance with such requirement, and of actual prejudice, habeas corpus relief shall not be granted. In all cases habeas corpus relief shall be granted to avoid a miscarriage of justice. If the court finds in favor of the petitioner, it shall enter an appropriate order with respect to the judgment or sentence challenged in the proceeding and such supplementary orders as to rearraignment, retrial, custody, or discharge as may be necessary and proper.
[3] O.C.G.A. § 9–14–51 provides as follows:
All grounds for relief claimed by a petitioner for a writ of habeas corpus shall be raised by a petitioner in his original or amended petition. Any grounds not so raised are waived unless the Constitution of the United States or of this state otherwise requires or unless any judge to whom the petition is assigned, on considering a subsequent petition,

aspect of Ground Four in Georgia state courts, Petitioner may not obtain federal habeas relief absent a showing of cause and actual prejudice, *Engle v. Isaac*, 456 U.S. 107, 129 (1982), or a showing that a fundamental miscarriage of justice would occur if federal court did not consider the claim, *Coleman v. Thompson*, 501 U.S. 722, 735 (1991) n. 1. Here, Petitioner has not established cause and prejudice for his procedural default of Ground Four, and there has not been a showing that a fundamental miscarriage of justice would result if Ground Four is not addressed on the merits in federal court as the state habeas court "clearly and expressly" held that O.C.G.A. § 9–14–48(d) barred Petitioner's claims. Therefore relief must be denied.

<u>CONCLUSION</u>

After a careful review of the record, it is **RECOMMENDED** that the instant Section 2254 petition be **DENIED**. Additionally, and pursuant to the requirements of Rule 11(b), it does not appear that Petitioner has made a substantial showing of the denial of a constitutional right. See also *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). Therefore, it is also **RECOMMENDED** that the Court **DENY** a certificate of appealability in its final order.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation, or seek an extension of time to file objections, **WITHIN FOURTEEN (14) DAYS** after being served with a copy thereof. The District Judge shall make a de novo determination of those portions of the Recommendation to which objection is made. All other portions of the Recommendation may be reviewed for clear error.

The parties are further notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to

---

finds grounds for relief asserted therein which could not reasonably have been raised in the original or amended petition.

challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

      **SO RECOMMENDED**, this 17th day of September, 2015.


                        s/ Charles H. Weigle_____
                        Charles H. Weigle
                        United States Magistrate Judge